Filed 4/5/16  Williams v. Los Angeles County Metropolitan Transp. Authority CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROBERT WILLIAMS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY,<br><br>    Defendant and Appellant. | B259327<br><br>(Los Angeles County<br>Super. Ct. No. BC467568) |

APPEAL from an order of the Superior Court of Los Angeles County, Holly E. Kendig, Judge.  Affirmed.

Schuler & Brown, Jack M. Schuler, Tina Javaherian; Greines, Martin, Stein & Richland, Martin Stein, Alison Turner and Carolyn Oill for Defendant and Appellant.

The Mirroknian Law Firm, Reza Mirroknian and Peter A. Javanmardi for Plaintiff and Respondent.

––––––––––––––––––––

## INTRODUCTION

Defendant and appellant the Los Angeles County Metropolitan Transportation Authority (MTA) appeals from an order awarding attorney fees to plaintiff and respondent Robert Williams, who prevailed in his disability discrimination-related lawsuit under California's Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.). In awarding fees to Williams, the trial court calculated a lodestar figure and applied a 1.5 multiplier. The MTA contends on appeal that the court abused its discretion by applying the multiplier. We reject the contention and affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

Williams began working as a MTA bus operator in 1997. After Williams became disabled, the MTA fired him. Williams sued the MTA under the FEHA. A jury found in Williams's favor on his causes of action for disability discrimination, failure to provide reasonable accommodation, and failure to engage in a timely and good faith interactive process but against Williams on his retaliation cause of action. The jury awarded $498,098.08 in damages to Williams.[1]

Reza Mirroknian and Pedram Javanmardi represented Williams in that action on a full contingency basis, with no retainer or costs paid by Williams. Williams moved for attorney fees. Mirroknian requested a $600 hourly rate and Javanmardi requested a $325-to-$425 hourly rate. Labor and employment attorneys submitted declarations stating that these hourly rates were within the range of what Los Angeles attorneys in that practice area charge. Counsel also requested a multiplier of 2, based on the complexity of the issues, the risk in pursuing a contingency case, and the loss of other business.

The trial judge, who had presided over the entire case, including the almost two-week jury trial, granted attorney fees and applied a 1.5 multiplier. With respect to the lodestar, the court accepted Mirroknian's $600 hourly rate, "in light of his 17 years of experience and ultimately, the skill he employed in representing his client in this

---

[1] The MTA separately appealed from that judgment. (*Williams v. Los Angeles County Metropolitan Transportation Authority,* B254997.)

employment case." The court similarly approved Javanmardi's rate in "light of [his] 6 years of experience . . . and the skill [he] employed in representing his client." The court approved the time spent on the case, 1,903.2 hours. The lodestar therefore was $764,105.

The trial court also found that a multiplier was "appropriate," because in "this case, the issues were more difficult and complex than those in a typical FEHA litigation. Defendant MTA used worker's compensation terminology as an excuse for failing to accommodate the plaintiff under FEHA. Plaintiff's counsel was therefore required to distinguish for the jury workers' compensation issues from the legal obligations based on FEHA, and plaintiff's counsel showed considerable skill in doing so." The court also found that there "was a significant contingent risk involved." The delays caused by the MTA in getting the case to trial and "litigation posture increased the length and intensity of the litigation and the attorneys' fees, and also caused plaintiff's attorneys to forego other employment opportunities, particularly given the small size of the law firm with only two attorneys." The court acknowledged "the quality of the representation provided by plaintiff's counsel, the difficulty of separating worker's compensation terminology and issues from FEHA issues, as well as the results obtained by plaintiff's counsel. Indeed, the result was exceptional in light of the defendant's approach to the litigation." The court therefore found that a 1.5, rather than the multiplier of 2 plaintiff requested, was appropriate.

Applying the multiplier to the lodestar yielded $1,146,157.50 in attorney fees. When fees for the attorney fees motion and costs were added, the total attorney fees award was $1,163,977.50.

This timely appeal followed.

## DISCUSSION

"The basic, underlying purpose of FEHA is to safeguard the right of Californians to seek, obtain, and hold employment without experiencing discrimination on account" of their membership in a protected class. (*Flannery v. Prentice* (2001) 26 Cal.4th 572, 582-

3

583.)  To further this purpose, the FEHA provides for an award of reasonable attorney fees.  (*Ibid.*)  FEHA thus provides, "[i]n civil actions brought under this section, the court, in its discretion, may award to the prevailing party, . . . reasonable attorney's fees and costs . . . ."  (Gov. Code, § 12965, subd. (b).)  To determine the fee award, the trial court first determines the lodestar, i.e., the number of hours worked multiplied by a reasonable hourly fee.  (*Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1249.)  The court then has discretion to increase the lodestar by applying a multiplier or enhancement.  (*Ibid.*; *Weeks v. Baker & McKenzie* (1998) 63 Cal.App.4th 1128, 1171.)

We review a trial court's attorney fees award for abuse of discretion, and we presume that the court considered all appropriate factors in selecting and applying a multiplier.  (*Taylor v. Nabors Drilling USA, LP, supra*, 222 Cal.App.4th at pp. 1249-1250.)  " 'The "experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong"—meaning that it abused its discretion.  [Citations.]' "  (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095.)

Here, the MTA does not challenge the lodestar.  The MTA challenges the 1.5 multiplier, arguing that the trial court abused its discretion by using the same factors to calculate the lodestar and to impose the multiplier.  The lodestar is "the basic fee for comparable legal services in the community."  (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1132 (*Ketchum*).)  The lodestar "may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award."  (*Ibid.*)  When considering these factors, a trial court should "also consider the degree to which the relevant market" rate already compensates for them.  (*Id.* at p. 1138.)  In other words, "when determining the appropriate enhancement, a trial court

4

should not consider these factors to the extent they are already encompassed within the lodestar." (*Ibid.*) There should be no "double counting." (*Ibid.*; accord, *Flannery v. California Highway Patrol* (1998) 61 Cal.App.4th 629, 647 ["Whether an award is justified and what amount that award should be are two distinct questions, and the factors relating to each must not be intertwined or merged."].)

The "factor of extraordinary skill, in particular, appears susceptible to improper double counting." (*Ketchum, supra,* 24 Cal.4th at p. 1138.) "Thus, a trial court should award a multiplier for exceptional representation only when the quality of representation far exceeds the quality of representation that would have been provided by an attorney of comparable skill and experience billing at the hourly rate used in the lodestar calculation." (*Id.* at p. 1139.) Such exceptional quality of representation is exactly what the trial court here, in its discretion, found Mirroknian exhibited. The court noted that the issues in this case were "more difficult and complex" than in typical FEHA litigation, because the MTA used worker's compensation terminology to excuse compliance with FEHA. In "distinguish[ing] for the jury workers' compensation issues from the legal obligations based on FEHA," "plaintiff's counsel showed *considerable skill*." (Italics added.) By this, the court was clearly indicating that Mirroknian exhibited skill beyond that of an attorney with comparable skill and experience, billing at the lodestar hourly rate. That the court, in setting the lodestar, took general note of counsel's "skill" and experience, does not show there was "double counting." Rather, in setting the lodestar, the court simply adopted an hourly rate commensurate with other experienced attorneys in the community.

The MTA also takes issue with the trial court's characterization of this case as "more difficult and complex than those in a typical FEHA litigation." But the relationship between worker's compensation law and the FEHA and how it would be presented to the jury was discussed at length during pretrial conferences. The relationship between those laws, and, in particular, the meaning of "temporarily totally disabled" was also an issue at trial particularly during Jackie Anderson's and Emily

5

Matias's testimonies. We therefore see no abuse of discretion with this experienced court's finding that the complexity of this case exceeded that of the typical FEHA litigation.

The MTA next argues that the contingent risk could not support the multiplier. The MTA relies on *Weeks v. Baker & McKenzie, supra,* 63 Cal.App.4th at page 1175, which found in a FEHA case, that where there is a reasonable expectation of statutory attorney fees, the contingent nature of the litigation was an insufficient risk to justify a multiplier. *Weeks*, however, predated *Ketchum.* In *Ketchum*, our Supreme Court made clear that the contingent nature of a fee award is a proper factor to consider in awarding an enhancement. (*Ketchum, supra,* 24 Cal.4th at pp. 1132-1133; see also *Bernardi v. County of Monterey* (2008) 167 Cal.App.4th 1379, 1399 [enhancement to reflect contingency risk is one of the most common fee enhancers]; *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 394-395, 399.) The economic rationale for a fee enhancement in contingency cases is it " 'compensates the lawyer not only for the legal services he renders but for the loan of those services. The implicit interest rate on such a loan is higher because the risk of default (the loss of the case, which cancels the debt of the client to the lawyer) is much higher than that of conventional loans.' [Citation.] 'A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases.' " (*Ketchum,* at pp. 1132-1133; accord, *Horsford*, at pp. 399-400.)

The trial court thus found that there "was a significant contingent risk involved." Mirroknian took the case on a full contingency basis, with no retainer or costs paid by plaintiff. The contingency agreement provided no compensation in the event the MTA prevailed. Under *Ketchum*, therefore, the trial court did not abuse its discretion by taking into account the contingent risk.

6

Finally, we disagree that the trial court's "primary motivation" was to "punish" the MTA for its " 'scorched earth' " tactics. In referring to the MTA's litigation tactics, the court was merely pointing out that the MTA could hardly complain about the number of hours plaintiff's counsel billed when the MTA's litigation tactics necessitated that amount of work.

## DISPOSITION

The order is affirmed. Plaintiff and respondent is to recover his costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



ALDRICH, J.



We concur:




EDMON, P. J.




HOGUE, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.